**Dean WHITAKER, Plaintiff-Appellee,**

**v.**

**Nancy C. CARNEY, Director of Employee Relations for the City of Garland, et al., Defendants-Appellants.**

**No. 84–1685.**

United States Court of Appeals, Fifth Circuit.

Dec. 10, 1985.

Charles M. Hinton, Jr., City Atty., Garland, Tex., for defendants-appellants.

True & McLain, Ronald E. Deutsch, Daniel B. Jones, Dallas, Tex., for plaintiff-appellee.

Before WISDOM, GARWOOD and W. EUGENE DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

This appeal requires that we determine whether the federal civil rights removal statute, 28 U.S.C. § 1443(2), was appropriately invoked. Appellants, the City of Garland, Texas (the "City"), and certain of its officials, removed appellee's state mandamus action against appellants, in which appellee sought to enforce a request for access to certain personnel records of the City, under the Texas Open Records Act. Appellants in the removal proceedings asserted that compliance with appellee's request would constitute an act "inconsistent with" the City's Title VII duties as an employer respecting provision of a workplace free of sexual discrimination. The federal district court determined that the case had been improperly removed, and remanded it to the state court. We affirm.

**Facts and Proceedings Below**

Appellee, Dean Whitaker, was the Director of Accounting for the City. Appellants are the City, and Nancy Carney and Dean Ransom, the City's Director of Employee Relations and Assistant City Manager, respectively. The City set up a grievance procedure to consider informally complaints of sexual harassment brought by its employees. Part of this procedure provided for the confidentiality of the complainants' identities, ostensibly to encourage victims to come forward without fear of retaliation or embarrassment.

Carney and Ransom received in their official capacities a number of complaints from some of Whitaker's City employee female subordinates, which alleged sexual harassment by him. Carney and Ransom began an informal investigation pursuant to the City's grievance procedure. "Due to the highly sensitive nature of the investigation," Ransom hired David Mitchell, an investigator otherwise unidentified in the record, "to interview the employees claim-

ing to be aggrieved." Whitaker claims that Mitchell "assembled a file of written interview statements from the various employees ... [and] made written memoranda regarding the results of his investigation." [1]

Ransom scheduled a meeting with Whitaker for the morning of March 30, 1983. At that conference, Ransom "discussed in general the allegations and ... evidence against [Whitaker]," who asserts that Ransom's "accusations forced [him] to submit his written resignation ... under the reasonable belief and expectation that his position would be terminated 'but for' his resignation." The City denies that it coerced Whitaker's resignation, characterizing it as "voluntarily" submitted.

Following his resignation, Whitaker made demand through counsel for all the documentary information which he alleged the City had assembled. On January 16, 1984, Assistant City Attorney Karen Brophy responded by letter to the request of Whitaker's counsel (apparently following a meeting with that counsel); she denied Whitaker access to whatever evidence respecting the complaints might be contained in the City personnel records, asserting that "[t]he City is obligated to protect employees who report Title VII violations." [2] Whitaker thereafter filed a mandamus action in the state district court in Dallas County, seeking to compel the production of the alleged documentary evidence under the Texas Open Records Act.[3] *See* Tex. Rev.Civ.Stat.Ann. art. 6252–17a, § 8 (Vernon Supp.1985) (hereinafter "Open Records Act"). When the mandamus was filed, over ten months had elapsed since Whitaker had left the City's employment. Apparently none of the City employees who complained of Whitaker ever filed any charge in respect to such complaints with the Equal Employment Opportunity Commission ("EEOC") or with any state agency serving a similar function. The 180-day period for filing such complaints with the EEOC had expired when Whitaker's mandamus was filed. *See* 42 U.S.C. § 2000e–5(e).

The City removed the mandamus case to the United States District Court for the Northern District of Texas, Dallas Division, pursuant to the federal civil rights removal statute, 28 U.S.C. § 1443(2), which provides in pertinent part:

"Any of the following civil actions or criminal prosecution, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

" . . . .

"(2) For any act under color of authority derived from any law providing for equal rights, *or for refusing to do any act on the ground that it would be inconsistent with such law.*" (Emphasis added.)

The City maintains that removal was proper under subsection 2 of section 1443, because its disclosure of the identities of those who had complained of Whitaker would, it asserts, be "inconsistent" with what the City claims is its affirmative Title VII duty to protect its employees from sexual harassment. The City argues in this connection that its grievance procedure had assured anonymity to employee complainants and that disclosure would have a

---

**1.** The City apparently denies that it received such written documents from Mitchell, claiming that "Mitchell made no final report, no conclusions or recommendations." Ransom also denies preparing a file containing documentary evidence concerning the complaints, as Whitaker's state complaint alleged.

**2.** Brophy apparently had previously offered to read to Whitaker "statements of employees," but such offer was apparently declined. The City Attorney declined to offer or supply copies of these statements because "the statements were so interwoven with job references it is impossible to cloak identities."

**3.** The City maintains such evidence, to whatever extent it exists, is not a part of Whitaker's personnel file, which is, under the Texas Act, the only such file to which Whitaker might clearly obtain access. *See* Tex.Rev.Civ.Stat.Ann. art. 6252–17a, § 3(a)(2), (3) (Vernon Supp.1985).

"chilling effect" on the proper functioning of the grievance procedure.

The district court determined that the City had improperly removed the case, and, without written reasons, remanded it to the state court. The City timely appealed. It sought and obtained from the district court a stay of the remand order pending appeal.

### Appellate Jurisdiction

■ ■ An order remanding a removed case to state court is ordinarily not reviewable by appeal. 28 U.S.C. § 1447(d); *see also In re Shell Oil Co.,* 631 F.2d 1156, 1157 (5th Cir.1980). But 28 U.S.C. § 1447(d) excepts from this general rule of nonappealability those orders which remand cases that were removed to federal court under the federal civil rights removal statute.[4] Appellants based their removal expressly upon section 1443(2). This Court may therefore review the district court's remand order. *State of Texas v. Gulf Water Benefaction Co.,* 679 F.2d 85, 86 (5th Cir.1982). *See also* 14A Wright, Miller & Cooper, *Federal Practice and Procedure* § 3740 (1985).[5]

By contrast, in the present case, removal *was* purportedly based on section 1443, and hence we are concerned, as *Thermtron* and *Royal* were not, with the *second* clause of section 1447(d) which expressly provides that remand orders of cases removed under section 1443 "shall be reviewable *by appeal* or otherwise." (Emphasis added.) This portion of section 1447(d) was added in 1964, *see Thermtron,* 96 S.Ct. at 598 n. 7, and under it the Supreme Court has on several occasions reviewed *appeals* from orders remanding cases which had been removed under section 1443. *See State of Georgia v. Rachel,* 384 U.S. 780, 86 S.Ct. 1783, 1786, 16 L.Ed.2d 925 (1966), *affirming Rachel v. State of Georgia,* 342 F.2d 336, 337 & n. 1 (5th Cir.1965); *City of Greenwood, Mississippi v. Peacock,* 384 U.S. 808, 86 S.Ct. 1800, 1804–05, 16 L.Ed.2d 944 (1966), *reversing Weathers v. City of Greenwood, Mississippi,* 347 F.2d 986 (5th Cir.1965) and *Peacock v. City of Greenwood, Mississippi,* 347 F.2d 679 (5th Cir.1965); *Johnson v. Mississippi,* 421 U.S. 213, 95 S.Ct. 1591, 1595, 44 L.Ed.2d 121 (1975), *affirming Johnson v. Mississippi,* 488 F.2d 284 (5th Cir.1974). *Thermtron* made no reference to the holdings in these cases, as it doubtless would have if the Court had there intended to hold that after the 1964 amendment to section 1447(d) orders remanding cases removed under section 1443 could not be reviewed by appeal but only by mandamus. Further, numerous decision of this Court have held that such orders can be reviewed by appeal. *See, e.g., Robinson v. State of Florida,* 345 F.2d 133, 134 (5th Cir.1965); *Congress of Racial Equality v. Town of Clinton,* 346 F.2d 911, 913–14 (5th Cir.1964); *Sunflower County Colored Baptist Association v. Trustees of Indianola Municipal Separate School District,* 369 F.2d 795 (5th Cir.1966); *Varney v. State of Georgia,* 446 F.2d 1368 (5th Cir.1971). We have so held following *Thermtron. See Robertson v. Ball,* 534 F.2d 63 (5th Cir.1976) (which cites *Thermtron* ); *State of Texas v. Gulf Water Benefaction Co.,* 679 F.2d 85, 86 (5th Cir.1982); *Smith v. Winter,* 717 F.2d 191 (5th Cir.1983). The above-cited decisions, many of which affirmed the remand, obviously do not turn on whether the section 1443 removal was proper.

---

**4.** Section 1447(d) provides:

"An order remanding the case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise."

**5.** In *Royal v. State Farm Fire and Casualty Co.,* 685 F.2d 124, 126 (5th Cir.1982), this Court, relying on *Thermtron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), stated that "a remand order, alone, does not ordinarily constitute a final, appealable judgment; accordingly, review of such an order, when permitted, should be by mandamus rather than direct appeal." However, neither *Royal* nor *Thermtron* dealt with remand of a case purportedly removed under section 1443. *Thermtron* held that the *first* clause of section 1447(d) did not preclude review of an order remanding a case which had been removed under section 1441(a) on grounds of diversity of citizenship, where the remand order was expressly and entirely based on grounds other than those stated in section 1447(c), the grounds in *Thermtron* being the crowded condition of the federal district court's docket. Review by mandamus was granted in *Thermtron,* the Court noting that mandamus was appropriate since, under prior holdings, a remand order "does not represent a final judgment reviewable by appeal." 96 S.Ct. at 594. In *Royal,* removal was likewise not under section 1443, but rather was under section 1441(a), being based on diversity. The *Royal* remand order was challenged on the basis of the *Thermtron* judicial exception to the nonreviewability provision of the *first* clause of section 1447(d). *Royal* stated that such a challenge could be raised only by mandamus; but that even if we treated the appeal as a petition for mandamus, relief would nevertheless be denied since the remand order did not *purport* to be based on grounds not cognizable under section 1447(c) and the case was hence not within the *Thermtron* exception to the first clause of section 1447(d). 685 F.2d at 126.

### Title VII Duties of an Employer

■ Appellants assert that Title VII places upon them an affirmative duty to maintain a workplace free of sexual harassment. *See* 42 U.S.C. §§ 2000e–2(a), 2000e–3(a); 29 C.F.R. § 1604.11. The City argues that this general duty leads in turn to an obligation to institute a workable grievance procedure for complaints of Title VII violations. Without passing on whether, or to what extent, such an obligation exists under Title VII, we are in any event unable to agree with appellants' further contention that Title VII includes an obligation to refuse to disclose to the employee about whom complaint is made any material aspects of sexual harassment complaints lodged against that employee under the employer's grievance procedure.

We simply can find no statutory or regulatory language which imposes such a duty. Section 2000e–2 provides only that

"(a) It shall be an unlawful employment practice for an employer—

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...."

No explicit requirements respecting any specific preventive measures or grievance procedures which might be consistent with the duties outlined in the statute are anywhere to be found in Title VII itself. Nor are the relevant EEOC regulations more helpful. Section 1604.11(a), 29 C.F.R., provides:

"Harassment on the basis of sex is a violation of Sec. 703 of Title VII [42 U.S.C. § 2000e–2].... Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment."

With respect to sexual harassment by co-workers, the regulations make the employer responsible "for acts of sexual harassment in the workplace where the employer ... knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action." 29 C.F.R. § 1604.11(d). As to sexual harassment by supervisory employees, the regulations state that an employer is "responsible ... regardless of whether the specific acts complained of were authorized or even forbidden by the employer and regardless of whether the employer knew or should have known of their occurrence." *Id.,* § (c). Perhaps most important in terms of appellants' contention is subsection (f) of the regulation:

"Prevention is the best tool for the elimination of sexual harassment. An employer should take all steps necessary to prevent sexual harassment from occurring, such as affirmatively raising the subject, expressing strong disapproval, developing appropriate sanctions, informing employees of their right to raise and how to raise the issue of harassment under Title VII, and developing methods to sensitize all concerned." 29 C.F.R. § 1604.11(f).

■ We are not aware of any other relevant provision of the statute or regulations. We find no support either in the statute or in the regulations for appellants' proposition that Title VII or the regulations thereunder *require* employers to maintain a *confidential* grievance procedure.

---

In *Royal,* we did not purport to disapprove of any of these cases. Consequently, we construe the statements in *Thermtron* and *Royal* to the effect that any review of remand orders must be by mandamus instead of appeal as being inapplicable to orders remanding cases removed (properly or not) under section 1443.

The statute and the regulations are simply not this specific nor broadly solicitous of potential victims of sexual abuse or other proscribed discrimination. The regulations suggest a variety of affirmative actions to prevent (or to remedy) and otherwise discourage sexual harassment by supervisors or other employees. The particular form such responses may take is nowhere articulated, however, beyond the general examples given in subsection (f) of the regulation. In conspicuous contrast to the statutory sections detailing the EEOC's informal mediation efforts, and the confidentiality which is expressly mandated for *those* proceedings, there is nowhere in the relevant statute or regulations applicable to the employer any requirement whatever that formal or informal grievance procedures be instituted, or even, should they be instituted, that those proceedings must be kept confidential.[6] We must conclude, therefore, that Title VII places no affirmative requirement upon the employer to institute an anonymous and confidential grievance procedure.

■ ■ We further observe that Whitaker has not been a City employee ever since a time many months before his mandamus was filed. Title VII nowhere confers an obligation on employers to see to it that their employees are free of sexual harassment or discrimination by nonemployees *outside the workplace. Cf.* 29 C.F.R. § 1604.11(e) (indicating that such duty may obtain as to actions of nonemployees *in* the workplace).[7] While it may indeed be true that the City's grievance procedure would work more optimally were the complainants' identities (and perhaps the complaints themselves) kept confidential, nonetheless, as previously stated, we find no indication in the statute or regulations that such anonymity is *required*. Moreover, there is no indication that the statute intended that particular employer choices of methods to prevent sexual discrimination in employment would necessarily displace *other* affirmative legal obligations which the employer might have under federal or state laws—including compliance with state open records acts. Finally, absent at least some express indication in the statute, we are disinclined to infer a requirement that a party accused of wrongdoing be kept ignorant of the identity of the accusers and the nature of their accusations, a practice which at least in most contexts runs so against the grain of our traditional notions of fairness.

■ We are not persuaded by the City's attempted analogy to the express statutory requirement that EEOC informal conciliation efforts be confidential: "Nothing said or done during and as part of such informal endeavors [*i.e.,* conciliation efforts] may be made *public by the* [Equal Employment Opportunity] *Commission,* its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned." 42 U.S.C. § 2000e-5(b) (emphasis added).[8] This ad-

---

**6.** Indeed, the regulation specifically implies that Title VII actions through the EEOC or the courts, where appropriate, are an expected response, and so places a duty upon the employer to inform its employees of "their right to raise and how to raise" Title VII harassment complaints. 29 C.F.R. § 1604.11(f).

**7.** 42 U.S.C. § 2000e-3(a) provides:

"It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

This prevents the employ*er* from retaliating; it does not impose on the employer a duty to prevent nonworkplace retaliation by those who are not its employees.

**8.** This section also provides that complainants' charges "shall not be made public by the Commission." But the statute does require that *notice* of charges be made to the employer, *i.e.,* the object of the complaint, and the statute nowhere requires the anonymity of the complainant. Moreover, the section makes violation of this instruction that neither the Commission nor any of it officers or employees make *public* the relevant evidence or charges a criminal violation of the statute. *See* 42 U.S.C. §§ 2000e-5(b), 2000e-8(e) ("unlawful for any officer or employee of the Commission to make public").

monition does not by its terms extend to employers. The desire for confidentiality on the part of the EEOC is presumably to encourage settlement of grievances by the parties. Finally, we note that even the prescription for EEOC discreetness respecting its informal mediation efforts does not preclude release of the identities of complainants or of the complaints themselves to the *parties;* rather, only release of such information *by the Commission or its employees* to the *public* is proscribed. Appellants' analogy to the EEOC duty of confidentiality thus fails completely.[9]

### Conclusion

We determine that Title VII does not prevent an employer from disclosing to the complained of individual sexual harassment in employment complaints made to the employer by its employees. Consequently, Title VII provides no basis for appellants' attempted removal to federal court under the federal civil rights removal statute, 28 U.S.C. § 1443(2), on the asserted ground that to comply with appellee's state Open Records Act request would be an act "inconsistent with" a law "providing for equal rights." [10]

Accordingly, the order of the district court remanding the case to the state court is AFFIRMED.

9. We note that appellants have made no showing that Whitaker's request is, in any event, appropriate and enforceable under the Texas Open Records Act. As the City pointed out in its Original Answer to the Complaint, filed in the federal court, appellee Whitaker has apparently not satisfied several of the Texas Act's prerequisites, including having made a written request, *see* Open Records Act, § 4, and having sought access to the records through the proper legal custodian of those records. *See id.,* § 5(a). Nor does it appear that the Attorney General of Texas has passed upon the question, a process which the City may timely request and which may be controlling of the disposition of Whitaker's request, even were it properly tendered. *Id.,* § 7. Even were there none of these impediments, it is not clear that the information and/or records sought by Whitaker are necessarily of a type to which he may obtain access under the terms of the Texas Act. *See id.,* § 3(a)(2), (3). *See also* note 3, *supra.* This entire question may thus be mooted by the state court's disposition of Whitaker's request. *See, e.g., Sunflower County Colored Baptist Associa-*

*tion v. Trustees of Indianola Municipal Separate School District,* 369 F.2d 795, 797–98 (5th Cir. 1966) (remand of case removed under section 1443(1) was proper where enforcement of state statute was not shown to necessarily "expressly deny" any federal right).

10. Thus we do not reach the issue of whether, as applied to this case where only the Title VII sex discrimination provisions are invoked, Title VII is a "law providing for equal rights" within the meaning of section 1443(2). *See, e.g., City of Greenwood, Mississippi v. Peacock,* 384 U.S. 808, 86 S.Ct. 1800, 1810 n. 22, 16 L.Ed.2d 944 (1966). Likewise, we do not reach the question of whether the City and its officials, defending a state mandamus suit by an allegedly aggrieved party on the grounds that the relief sought is prohibited by Title VII provisions applicable to all employers, are in this context the kind of officials intended to be protected by section 1443(2). *See Detroit Police Lieutenants and Sergeants Association v. City of Detroit,* 597 F.2d 566, 568 (6th Cir.1979).