**EQUAL EMPLOYMENT OPPORTUNI-TY COMMISSION, Plaintiff,**

**v.**

**NEWTOWN INN ASSOCIATES and Martin Dehaan, Defendants.**

**Civ. A. No. 85–408–N.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Jan. 24, 1986.

Michael A. Rhine, Asst. U.S. Atty., Norfolk, Va., Marcia Bove, Trial Atty., EEOC, Baltimore, Md., Johnny J. Butler, Acting Gen. Counsel, Phillip Sklover, Assoc. Gen. Counsel, EEOC, Washington, D.C., for plaintiff.

Wm. E. Rachels, Jr., Willcox & Savage, Norfolk, Va., Leslie Robert Stellman, Littler, Mendelson, Fastiff & Tichy, Baltimore, Md., for defendants.

## OPINION AND ORDER

DOUMAR, District Judge.

This matter is before the Court on the motion for partial summary judgment filed by the plaintiff, the Equal Employment Opportunity Commission (EEOC). The defendants have responded to the motion with a brief in opposition and supporting materials; the matter is now ripe for resolution.

### I.

On January 5, 1984, Tina Shipley and Sharon Brunson filed charges with the EEOC against "Adams (Ramada Inn)" for subjecting them to sexual harassment on the job in violation of Title VII of the Civil Rights Act of 1964. According to the charges, the women, while performing their duties as cocktail waitresses, were required by their employers pursuant to a marketing scheme called the "confetti concept" to project an air of sexual availability to customers through the use of provocative outfits. Additionally, the charging parties alleged that they were required to flirt with customers and to dance, both with customers and alone, in a sexually provocative and degrading fashion.

As a result of these complaints, the EEOC issued to defendant Martin DeHaan a "Notice of Charge of Discrimination and Notice of Fact Finding Conference." DeHaan is apparently the only general partner in Newtown Inn Associates, a limited partnership which owns and operates the Ramada Inn at Newtown Road in Norfolk, Virginia. DeHaan is also the principal or sole stockholder in Creative Inns Corporation, which provides management services to the hotel in general and "Adams" in particular.

The EEOC proceeded with its investigation and on August 23, 1984 issued a "Determination" in each matter. The Commission determined, *inter alia*, that pursuant to the confetti concept, the cocktail waitresses at Adams were required to dress in revealing, thematic attire for events such as "Bikini Night", "P.J. Night", and "Whips and Chains Night". As a consequence, the employees were subjected to unwelcome sexual proposals and both verbal and physical abuse of a sexual nature. The Commission also determined that the charging parties "and at least six other female hostesses were reassigned to ... a less desirable shift" in retaliation for their

complaints concerning these new job requirements. Finally, each determination included an invitation to the respondent to join a collective effort to reach a "just resolution" of the dispute through settlement discussions.

The invitation was accepted by the respondent and conciliation efforts commenced in September of 1984. At the first meeting between the parties, the EEOC indicated that compliance with Title VII would require, *inter alia,* front pay or reinstatement together with back wages and interest for both charging parties and reinstatement and back wages for five additional individuals allegedly constructively discharged in retaliation for their objections to the confetti concept. Although there is considerable dispute as to the nature and extent of subsequent conciliation efforts by the EEOC and the evolution of the respective positions of the parties, it is undisputed that additional conciliation conferences were held on October 10, October 26, October 31, and November 2, of 1984. On November 8, the EEOC wrote the respondent's counsel to inform him that unless an additional conference was scheduled and an offer entailing "full relief" was tendered by November 14, the Commission would "consider conciliation to have failed" and would pursue judicial remedies. On November 15, 1984, the Commission sent a letter to this effect to the named respondent and its counsel.

## II.

■ As a threshold matter, this Court must determine whether the EEOC satisfied its statutory responsibility to "endeavor to eliminate [the] unlawful employment practice by informal methods of conference, conciliation and persuasion." 42 U.S.C. § 2000e–5(b). The defendants' claim that the position taken by the EEOC in its letter of November 8, 1984 was unreasonable in light of what they apparently perceived as very substantial chances for a resolution by conciliation. Since an attempt at conciliation is a jurisdictional prerequisite to the initiation of a lawsuit by

the EEOC, *EEOC v. Radiator Specialty Co.,* 610 F.2d 178, 183 (4th Cir.1979), *but see Johnson v. Seaboard Air Line Railroad Co.,* 405 F.2d 645 (4th Cir.1968) (not jurisdictional predicate to suit by injured individual), this Court must resolve this issue before proceeding to the other claims of the parties.

■ As a preliminary matter, this Court notes that the scope of judicial review given the Commission's decision to truncate the conciliation period is exceedingly narrow. Under 42 U.S.C. § 2000e–5(f)(1), the Commission is empowered to file suit against any respondent named in the charge if 30 days after the filing of the charge "the Commission has been unable to secure from the respondent a conciliation agreement *acceptable to the Commission...." Id.* (emphasis added). The statutory language places only one restraint on the exercise of the Commission's discretion, i.e., that the conciliation period be at least 30 days in length. Since the conciliation efforts in the instant case extended over more than two months, the defendant can only claim that the Commission's decision was so arbitrary and capricious as to be an abuse of the discretion granted it by Congress. *See EEOC v. Canadian Indem. Co.,* 407 F.Supp. 1366 (C.D.Cal.1976).

According to the plaintiff, the defendant has steadfastly refused to acknowledge its liability for damages attributable to several waitresses allegedly "constructively discharged" for complaining about their roles in the "confetti concept." The plaintiff also maintains that the defendant has offered only negligible amounts to cover damages suffered by the charging parties.

The defendants' characterization of the conciliation period is markedly different. They apparently claim that relatively little separated the parties and that consequently the cessation of conciliation efforts in early November was premature.

■ "Two important purposes are served by [the] preadjudicative administrative procedure [required of the EEOC]: first, the employer is fully notified of the

violation alleged by the charging party; and second, the EEOC has the opportunity to consider all the charges and to attempt their resolution through conciliation and voluntary compliance." *EEOC v. American National Bank,* 652 F.2d 1176, 1185 (4th Cir.1981). In the instant case, the EEOC identified alleged violations of Title VII and provided the defendants every opportunity to voluntarily comply with what the EEOC perceived to be necessary to rectify the transgressions. Even if we accept the defendants' version of the facts, their settlement offers never included what the EEOC determined was necessary to provide full relief. While trial on the merits may ultimately prove the defendants right, Congress has given the Commission the power to determine initially what Title VII requires by allowing them to determine what is an "acceptable agreement". *See* 42 U.S.C. § 2000e-5(f)(1). Since the defendants never offered to execute a conciliation agreement acceptable to the Commission, this Court cannot say that EEOC's decision to terminate conciliation efforts was arbitrary or capricious.

### III.

The defendants claim that the failure of the charging parties in the administrative proceeding to properly name them as respondents constitutes a jurisdictional defect and requires dismissal of this suit against them.

The language of 42 U.S.C. § 2000e-5(f)(1) seems clear. That statute empowers the EEOC to "bring a civil action against any respondent ... *named in the [administrative] charge*". While this language appears to preclude lawsuits against unnamed parties, exceptions have frequently been made when the failure to name a party is only a technical defect and results in no prejudice to the defendant. *See, Eggleston v. Chicago Journeyman Plumbers,* 657 F.2d 890 (7th Cir.1981); *Glus v. G.C. Murphy Co.,* 562 F.2d 880 (3d Cir. 1977).

■ Making such an exception seems particularly appropriate in the present case. It is undisputed that one named defendant, Michael DeHaan, has a controlling interest both in Newtown Inn Associates, the other named defendant, and Creative Inns Corp. *See, e.g., Glus v. G.C. Murphy Co., supra; Brewster v. Shockley,* 554 F.Sup. 365 (W.D.Va.1983); *EEOC v. Charleston Elec. Joint Apprenticeship,* 587 F.Supp. 528 (S.D.W.Va.1984) (utilizing exception to naming requirement when sufficiently close relationship exists between named and unnamed parties). This Court is aware of the Fourth Circuit's opinion in *Dickey v. Greene,* 710 F.2d 1003 (4th Cir. 1984) but, like Judge Haden in *Charleston Electric,* find it distinguishable from the case at bar since the defendants herein had actual notice and participated in the conciliation process. *See Marks v. Prattco, Inc.,* 607 F.2d 1153, 1156 (5th Cir.1979) (applying F.R.Civ.P. 15(c) standard for changing name of party to EEOC action). For these reasons, the Court feels the defendants' objection is without merit and hereby GRANTS summary judgment to the plaintiff on this issue.

### IV.

The plaintiff also asks this Court to hold that the administrative charges brought by Shipley and Brunson and the resulting lawsuit properly encompass the alleged constructive discharge of five other waitresses. The defendant contends that the constructive discharge theory is an independent charge of discrimination not encompassed by the original administrative grievances and therefore is beyond the scope of this suit.

The EEOC's letters of determination dated August 23, 1984 indicated that the "[c]harging part[ies] and at least six other female hostesses were reassigned to ... a less desirable shift.... Further there is reasonable cause to believe that Respondent retaliated against each of the six females assigned to the happy hour shift because they opposed Respondent's confetti concept." The question is whether the Commission's constructive discharge theory is encompassed within this language.

*See EEOC v. General Electric Co.,* 532 F.2d 359 (4th Cir.1976).

In *General Electric,* two black employees filed EEOC administrative complaints against their employer alleging racial discrimination. During the course of their investigation, the Commission determined that the company had also been guilty of gender-based discrimination. When the matter reached litigation, the district court granted summary judgment to the company on the gender discrimination charge, holding that the EEOC lacked "standing" to maintain the cause. In reversing the district court's decision, the Fourth Circuit noted that the purpose of the administrative charge is to "trigger the investigatory and conciliatory procedures of the EEOC." *Id.* at 364. "The charge merely provides the EEOC with 'a jurisdictional springboard to investigate whether the employer is engaged in any discriminatory practices'." *Id.* at 364 (quoting from *EEOC v. Huttig Sash and Door Co.,* 511 F.2d 453, 455 (5th Cir.1975)).

■ "The test … is whether, on the entire record, the new charge appears to be one 'initiated' by the agency or one that grows reasonably out of the investigation of the initial charge." *EEOC v. General Electric Co.,* 532 F.2d at 368. It seems clear to this Court that the differences between the original and subsequent charges in *General Electric* were of considerably greater import, and of potentially greater prejudice to the defendant than the distinctions that separate the initial and ultimate charges here. A charge of gender discrimination following an initial race-based complaint would require the employer to institute a separate investigation of completely different employment policies and practices. In the instant case, all that differs between the initial charge (retaliatory reassignment) and the ultimate one (constructive discharge) is the final result of the actions allegedly taken by the employer. To the extent the subsequent charge broadens the scope of the suit, it does so only minimally. The Commission has satisfied the Court that the ultimate complaint logically flows from the substance of the initial administrative charge.

## V.

The next issue raised by the plaintiff's motion for partial summary judgment is the construction to be given the "bona fide occupational qualification" defense under 42 U.S.C. § 2000e–2(e)(1).

On the facts developed thus far, any ruling this Court might make on the bona fide occupational qualification issue would constitute an advisory opinion and would not serve to significantly narrow the scope of the trial. Consequently, at this time, the Court DENIES the plaintiff's motion as it relates to this issue.

## VI.

The plaintiff moved this Court to rule that the charges of Shipley and Brunson were filed in time to allow suit to proceed on all the charges detailed in its complaint. Since the defendants do not contest this assertion, summary judgment is hereby GRANTED on this issue.

## CONCLUSION

In response to the plaintiff's motion for partial summary judgment, the Court hereby holds (1) that the plaintiff did fulfill its statutory obligation to conciliate the matters involved in this suit; (2) that the failure, at the administrative level, of the charging parties to properly name the defendants herein does not foreclose suit against them in this suit; (3) that the plaintiff's constructive discharge theory reasonably grew out of the Commission's investigation of the initial charges; (4) that it is premature for this Court to rule on the availability of the bona fide occupational qualifications defense; and (5) that all charges alleged in the plaintiff's complaint were timely filed.

IT IS SO ORDERED.