Carol Ann POWELL, Plaintiff,

v.

**LAS VEGAS HILTON CORPORATION dba Las Vegas Hilton Hotel & Casino, Defendant.**

**No. CV–S–91–359–PMP (RJJ).**

United States District Court,
D. Nevada.

May 7, 1992.

Richard Segerblom, Las Vegas, NV, for plaintiff.

Scott M. Mahoney, Hilton NV Corp., Las Vegas, NV, for defendant.

## ORDER

PRO, District Judge.

### I. PROCEDURAL HISTORY

This action was commenced May 14, 1991, by the filing of Plaintiff's Complaint (# 1), answered by Defendant on June 7, 1991 (# 3). After a period of discovery, on October 23, 1991, Defendant filed a Motion for Summary Judgment (# 14) pursuant to Federal Rules of Civil Procedure 56 (# 14). On December 9, 1991, Plaintiff filed an Opposition (# 22) and on January 3, 1992, Defendant filed a Reply (# 26).

### II. FACTUAL HISTORY

On June 8, 1989, Plaintiff was hired by Defendant as a "21" dealer. During her thirteen months of employment with Defendant, Plaintiff was reprimanded on four different occasions (August 20, 1989; September 16, 1989; May 22, 1990; and July 7, 1990) for rudeness to Defendant's customers. Following the last incident, Plaintiff was suspended and, on July 9, 1990, she was terminated. Defendant contends that Plaintiff was fired for her rudeness to customers. Plaintiff, on the other hand, contends that she was fired in retaliation for her protests against hostile environment sexual harassment. In support of her claim, Plaintiff denies that the first three incidents of rudeness alleged by Defendant occurred. As to the last incident that resulted in her termination, Plaintiff contends that her rudeness, if any, was in response to that customer's sexually harassing behavior.

Furthermore, Plaintiff claims that during her employment she reported to Defendant three or four specific incidents of sexual harassment. Plaintiff alleges that on one occasion a drunk customer "screamed" to her that she had "great tits." Although Plaintiff told her supervisor, "I don't want to take this," her complaint was ignored. Plaintiff alleges that on another occasion a customer, while telling dirty jokes and laughing, stared at Plaintiff's derriere and then told Plaintiff that she had "great legs." When Plaintiff reported the customer to the floorperson, Eva Rowen, she was told to take it as a "compliment." Plaintiff alleges that on another occasion she reported to the floorperson, Richard Clutters, that a customer was staring at her. According to Plaintiff, Mr. Clutters ignored her complaint. Plaintiff alleges that on another occasion she reported to the floorperson, Bill Hanson, that a customer was staring at her. According to Plaintiff, Mr. Hanson told her that the customer "was allowed to stare at whatever he wants and for as long as he wants." Finally, with regard to the event that led to Plaintiff's termination, Plaintiff alleges another incident of staring that went on for approximately 10 to 20 minutes and was accompanied by ges-

tures. Plaintiff attempted to handle this incident herself by telling the customer as he was leaving that "now you can stare at someone else."

Defendant claims that these incidents do not constitute sexual harassment. Furthermore, Defendant disputes that Plaintiff's complaints were ignored. As to the "great tits" remark, Defendant alleges that another floorperson in the area, Deanna Miller, recalled that the customer commented on Plaintiff's "nice figure" or "nice body" and that after Plaintiff said, "I don't want to take this" or "do something," Ms. Miller stepped toward the game at which time the customer said, "well, I take it back." Thereafter, the supervisor stepped toward the game. Ms. Miller said that "if I really thought [Plaintiff] was being abused I would have stood there and defended her, or said something to the floor supervisor that was in charge of the area where she was working." As to the "great legs" remark involving floorperson Eva Rowen, Defendant alleges that Ms. Rowen recalled that a customer commented to Plaintiff, "what nice legs you got." The customer then "walked away" and after Plaintiff left the table asked Ms. Rowen, "aren't you going to do anything about that?" As to the staring incident involving floorperson Richard Clutters, Defendant alleges that Mr. Clutters recalled that Plaintiff told him she turned down a customer who asked for a date and that the customer was still standing in her vicinity. Mr. Clutters observed that the customer was standing approximately fifteen to twenty feet away in a "nonthreatening manner" and that after a few minutes, the customer left. Mr. Clutters said that if the man did anything out of the ordinary "I was right there and security was just a phone call away ... she was protected." As to the staring incident involving floorperson Bill Hanson, Defendant made no comment. As to the final staring incident that resulted in Plaintiff's termination, Defendant alleges that, contrary to Hilton procedure, Plaintiff failed to ask a supervisor to remedy the situation. Furthermore, Plaintiff used profanity in handling the matter and made such comments to the customer as "why don't you get the fuck away from this table and go stare at someone else" and "I don't give a fuck who you tell." With respect to all of the alleged staring incidents, Defendant contends that it is difficult to discern staring at the dealer personally from watching the game generally.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("E.E.O.C."). On February 17, 1991, the E.E.O.C. issued to Plaintiff a Notice of Right to Sue. On May 14, 1991, Plaintiff commenced these proceedings under Title VII, 42 U.S.C. § 2000e. Plaintiff also raises pendent state claims such as employment discrimination under N.R.S. § 613.330, violation of Nevada's public policy to protect females at work, and intentional infliction of emotional distress. Plaintiff seeks back pay, including benefits and prejudgment interest, reinstatement or, alternatively, front pay, compensatory damages, and punitive damages against Defendant.

### III. MOTION FOR SUMMARY JUDGMENT (# 14)

#### A. *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distributing Corp.,* 693 F.2d 870, 883 (9th Cir.1982).

Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 321–23, 106 S.Ct. 2548, 2551–52, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive

evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Cal. Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1306 (9th Cir.1982) and *Admiralty Fund v. Jones*, 677 F.2d 1289, 1293 (9th Cir.1982) (both citing *United States v. First National Bank of Circle*, 652 F.2d 882, 887 (9th Cir.1981)). When determining whether a genuine issue of material fact exists for summary judgment purposes, all facts and inferences drawn must be viewed in the light most favorable to the responding party. *Pollar v. CBS, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). Summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor*, 677 F.2d 1297, 1299 (9th Cir.1982).

This Court is cognizant that a trilogy of Supreme Court cases establishes that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Federal Rules of Civil Procedure 1); *see also Avia Group Intern., Inc. v. L.A. Gear California*, 853 F.2d 1557, 1560 (Fed. Cir.1988).

B. *Plaintiff's Claims*

1. SEXUAL HARASSMENT

a. *An Employer May be Liable for Sexual Harassment of Employees by Nonemployees*

The threshold issue presented by this case, and one of first impression in this Court, is whether Defendant could be held liable for sexual harassment of employees by nonemployees.

Only one line of cases has confronted the issue of sexual harassment of employees by nonemployees. In these cases, where female employees were sexually harassed as a result of having to wear sexually provocative uniforms, the courts found that an employer's dress code could violate Title VII. *E.E.O.C. v. Newtown Inn Associates*, 647 F.Supp. 957 (E.D.Va.1986); *E.E.O.C. v. Sage Realty Corp.*, 507 F.Supp. 599 (S.D.N.Y.1981); *Marentette v. Michigan Host, Inc.*, 506 F.Supp. 909 (E.D.Mich.1980). These cases are not dispositive, however, because here Plaintiff is not complaining that her uniform entices the sexual harassment.

Notwithstanding the lack of case law directly on point, the E.E.O.C. Guidelines, promulgated in 1980 to assist courts in sexual harassment cases, provide that:

> An employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action. In reviewing these cases the Commission will consider the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of such non-employees.

29 C.F.R. § 1604.11(e). The U.S. Supreme Court, in *General Elec. Co. v. Gilbert*, 429 U.S. 125, 141–42, 97 S.Ct. 401, 410–11, 50 L.Ed.2d 343 (1976), indicated the weight that should be accorded the C.F.R.:

> We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

The U.S. Supreme Court has accepted the E.E.O.C. Guidelines for guidance in examining hostile environment claims of sexual harassment. *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986).

Although not squarely facing the issue, a few courts have identified 29 C.F.R. § 1604.-11(e) as authority for imposing liability on an employer for sexual harassment of employees by nonemployees. The Fifth Circuit, while holding that employers will not be liable for sexual harassment committed by nonemployees *outside* the workplace, pointed out that 29 C.F.R. § 1604.11(e) indicates that employers may be liable for sexual harassment committed by nonemployees *inside* the workplace. *Whitaker v. Carney,* 778 F.2d 216, 221 (5th Cir.1985). *See also Garziano v. E.I. Du Pont De Nemours & Co.,* 818 F.2d 380, 387 (5th Cir.1987) ("federal law imposes a specific duty upon employers to protect the workplace and the workers from sexual harassment, including redressing known occurrences of sexual harassment" ) (citing 29 C.F.R. § 1604.11(e)) (other citations omitted). The Eleventh Circuit recognized that "[t]he environment in which an employee works can be rendered offensive in an equal degree by the acts of supervisors, coworkers, *or even strangers to the workplace.*" *Henson v. City of Dundee,* 682 F.2d 897, 910 (11th Cir.1982) (citing *E.E.O.C. v. Sage Realty Corp.,* 507 F.Supp. 599, 609–10 & n. 16 (S.D.N.Y.1981) and 29 C.F.R. § 1604.11(e) (1981) (other citations omitted) (emphasis added)). *See also Moffett v. Gene B. Glick Co., Inc.,* 621 F.Supp. 244, 272 (N.D.Ind.1985) (finding harassment of a superior by subordinates, the court was "convinced that the relationship between the parties is immaterial to the question of whether plaintiff could be harassed in violation of Title VII").

Because "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult," *Meritor,* 477 U.S. at 65, 106 S.Ct. at 2405, this Court holds that, in the appropriate case, an employer could be liable for the sexual harassment of employees by nonemployees, including its customers.

b. *Whether the Nonemployee's Conduct Constituted Sexual Harassment of Plaintiff is a Question of Fact*

■ In *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986), the U.S. Supreme Court recognized the hostile or offensive work environment theory of liability for sexual harassment. The Ninth Circuit has developed that theory and set out the elements that a plaintiff must show:

(1) that he or she was subjected to sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

*Jordan v. Clark,* 847 F.2d 1368, 1373 (9th Cir.1988), *cert. denied sub nom., Jordan v. Hodel,* 488 U.S. 1006, 109 S.Ct. 786, 102 L.Ed.2d 778 (1989).

1) *Was the Conduct of a Sexual Nature?*

The specific acts of sexual harassment alleged by Plaintiff consisted of two incidents of verbal abuse ("great tits" and "great legs") and three incidents of staring. On each of these occasions, the actor was one of Defendant's male customers. Although there is some dispute as to exactly what the men were looking at in the staring incidents (Plaintiff herself or merely the game), a reasonable jury could find the "great tits" and the "great legs" comments were sexual in nature.

2) *Was the Conduct Unwelcome?*

On each of the occasions of alleged sexual harassment, Plaintiff unambiguously objected to the conduct. On four occasions, Plaintiff complained directly to her immediate supervisor, the floorperson in charge. On the last occasion, which resulted in Plaintiff's termination, she spoke directly to the customer. Thus, a reasonable jury could find that Plaintiff did not welcome the conduct.

3) *Was the Conduct Severe or Pervasive?*

The U.S. Supreme Court has stated that:

[T]he " 'mere utterance of an ethnic or racial epithet which engenders offensive

feelings in an employee' would not affect the conditions of employment to sufficiently significant degree to violate Title VII. For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'"

*Meritor,* 477 U.S. at 67, 106 S.Ct. at 2405, citing *Henson v. Dundee,* 682 F.2d 897, 904 (11th Cir.1982).

The Ninth Circuit has recently held that whether or not the conduct is sufficiently severe or pervasive is to be determined under the "reasonable victim" standard. *Ellison v. Brady,* 924 F.2d 872, 879 (9th Cir. 1991). The Court explained how the standard is to be interpreted.

First, the "severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Id.* at 878. In other words, one act may be sufficient if it is particularly severe while less intense incidents may be sufficient if numerous. *Id.* Plaintiff described five incidents of alleged sexual harassment: two incidents of verbal abuse and three incidents of staring. Placing the occurrences of alleged sexual harassment in the context of Plaintiff's employment, Plaintiff estimated that she came in contact with 50 to 60 customers per night, amounting to thousands of customers during her 13 months of employment with Defendant. Although during this time Plaintiff made no more than five complaints to Defendant, Plaintiff has indicated that the incidents are "constant on weekends."

Second, "in evaluating the severity and pervasiveness of sexual harassment, we should focus on the perspective of the victim." *Id.* In so doing, the court should discount "'stereotyped notions of acceptable behavior'" and keep in mind that "what many men may not consider objectionable may offend many women." *Id.* (citations omitted). Therefore, Defendant's explanation that "it is inevitable in a job that requires constant contact with the public (particularly one in a city that is a 'fun' destination where people sometimes imbibe to excess and often lose more money than they should) that customers will sometimes make

inappropriate comments, sexual or otherwise" (Defendant's Motion for Summary Judgment (# 14) at 8), is not a defense. "[T]he reasonable victim standard ... classifies conduct as unlawful sexual harassment even when harassers do not realize that their conduct creates a hostile working environment." *Ellison* at 880. Therefore, the alleged harasser's intent is unimportant and "compliments" are not a defense. To find otherwise would freeze the status quo of the workplace so that, ironically, a previously sexually harassing environment is itself a defense. "By acknowledging and not trivializing the effects of sexual harassment on reasonable women, courts can work towards ensuring that neither men nor women will have to 'run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living.'" *Id.* at 879–80 (citing *Henson* at 902).

The incidents of alleged sexual harassment as depicted by Plaintiff are more than the "mere utterance of an epithet." *Meritor,* 477 U.S. at 67, 106 S.Ct. at 2405 (citing *Henson* at 904). Whether or not a reasonable victim would find them "sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment" is appropriately an issue of fact for the jury, not one which this Court can summarily adjudicate.

4) *Was Defendant's Action Appropriate?*

Even if Plaintiff was the victim of sexual harassment, Defendant would not be liable in all circumstances. The U.S. Supreme Court has declined to express a rule for employer liability but has directed courts to look to agency principles. The Court did suggest that employers are not automatically liable but lack of notice "does not necessarily insulate that employer from liability." *Meritor,* 477 U.S. at 72, 106 S.Ct. at 2408.

The Ninth Circuit has indicated that "[t]he prevailing trend of the case law ... seems to hold that employers are liable for failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known." *E.E.O.C. v. Hacienda Hotel,* 881 F.2d 1504,

1515–16 (9th Cir.1989). The "knew or reasonably should have known" language parallels the E.E.O.C. Guidelines which further indicates that the employer has a duty to "take immediate and appropriate corrective action." 29 C.F.R. § 1604.11(e); *Ellison* at 881 (citing 29 C.F.R. § 1604.11(d)). Furthermore, "[e]mployers have a duty to 'express[ ] strong disapproval' of sexual harassment and to 'develop[ ] appropriate sanctions." *Id.* (citing 29 C.F.R. § 1604.11(f)). "[R]emedies should be 'reasonably calculated to end the harassment,'" *Ellison* at 882 (citing *Katz v. Dole* 709 F.2d 251, 256 (4th Cir.1983)), and "remedies should be 'assessed proportionately to the seriousness of the offense'" *id.* (citing *Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 309 (5th Cir.1987). "In essence, then, we think that the reasonableness of an employer's remedy will depend on its ability to stop harassment by the person who engaged in harassment." *Ellison* at 882.

The Defendant indicates that it has a policy against sexual harassment. A dealer having a problem must "notify a floorperson." The Ninth Circuit, however, "has held that a Title VII plaintiff need not exhaust her employer's internal remedies." *E.E.O.C. v. Hacienda Hotel,* 881 F.2d 1504, 1516 (9th Cir. 1989) (citation omitted). Moreover, Plaintiff alleges that although she complained to management of sexual harassment by Defendant's customers, her complaints were ignored. Plaintiff's allegation suggests, and a reasonable jury could find, that Defendant's policy either was not enforced or its procedure was inadequate.

Therefore, Defendant's Motion for Summary Judgment (# 14) will be denied with respect to Plaintiff's claim under the theory of sexual harassment pursuant to Title VII.

c. *Whether Defendant's Reason for Terminating Plaintiff was Legitimate is a Question of Fact*

■ Defendant claims that Plaintiff was terminated for a legitimate reason, i.e., rudeness to customers rather than in retaliation against Plaintiff's protests of sexual harassment. Plaintiff was reprimanded on four occasions for rudeness to customers. But since Plaintiff denies that these incidents occurred, a question of fact remains which precludes summary judgment.

Therefore, Defendant's Motion for Summary Judgment (# 14) will be denied with respect to Defendant's affirmative defense under the theory of legitimacy of termination.

d. *Plaintiff's Falsification of Her Employment Application is Independent Grounds for Termination*

■ Ignoring that Plaintiff was terminated for rudeness to customers, Defendant contends it had independent grounds for terminating Plaintiff. Defendant alleges that Plaintiff falsified her employment application because she omitted that she was terminated during probation in prior employment. Defendant further alleges it would not have hired Plaintiff if it had known of the prior termination. Defendant argues, therefore, that even if Plaintiff could prevail under her sexual harassment theory, Defendant is not required to provide Plaintiff reinstatement or back pay.

Plaintiff does not dispute that she omitted the information from her employment application but does deny that Defendant would not have hired her. Plaintiff's bare denial fails to "set forth specific facts demonstrating that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 321–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Accordingly, Defendant's Motion for Summary Judgment (# 14) will be granted with respect to Defendant's affirmative defense under the theory of falsification of employment application as to any equitable remedies sought by Plaintiff.

■ Nevertheless, the Civil Rights Act of 1991 has amended Title VII to provide compensatory and punitive damages. This Court has held that the Act is retroactive to cases pending at the time of enactment. *Sanders v. Culinary Workers Union Local No. 226,* 783 F.Supp. 531 (D.Nev.1992). Therefore, even if Plaintiff is not entitled to equitable relief, she is entitled to the legal remedies of compensatory and punitive damages for any

sexual harassment for which Defendant is found liable.

Therefore, Defendant's Motion for Summary Judgment (# 14) will be denied with respect to Defendant's affirmative defense under the theory of falsification of employment application as to any legal remedies sought by Plaintiff.

### 2. PUBLIC POLICY EXCEPTION TO AT–WILL EMPLOYMENT

■ Plaintiff's response to Defendant's argument in opposition to the public policy against sexual harassment exception to at-will employment is based on *Western States Mineral Corp. v. Jones,* 107 Nev. 116, 807 P.2d 1392. *Western States* holds that tort remedies for violation of public policy as an exception to at-will employment are unavailable where the statutory law already provides the same remedies. The Civil Rights Act of 1991 now provides tort remedies for sexual harassment. Therefore, Defendant's Motion for Summary Judgment (# 14) will be granted with respect to Plaintiff's claim under the theory of public policy exception to at-will employment.

### 3. EMOTIONAL DISTRESS

■ Under Title VII and the reasonable victim standard, Defendant may be liable for conduct which it did not recognize as sexual harassment. *Ellison v. Brady,* 924 F.2d 872, 880 (9th Cir.1991). Under the common law theory of intentional infliction of emotional distress, however, Defendant is liable only where "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Candelore v. Clark County Sanitation Dist.,* 752 F.Supp. 956 (D.Nev.1990) (citing Restatement (Second) of Torts § 41 and Comments thereto (1965)).

This Court finds that the conduct on which Plaintiff relies is not so extreme and outrageous as to establish this claim. Therefore, Defendant's Motion for Summary Judgment (# 14) will be granted with respect to Plaintiff's claim under the theory of intentional infliction of emotional distress.

### 4. PUNITIVE DAMAGES

The Civil Rights Act of 1991 amends Title VII so that punitive damages are now available to Plaintiff. Therefore, Defendant's Motion for Summary Judgment (# 14) will be denied with respect to Defendant's theory of punitive damages.

### ORDER

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (# 14) is granted with respect to Plaintiff's claim under the theory of public policy exception to at-will employment, with respect to Defendant's affirmative defense under the theory of falsification of employment application as to any equitable remedies sought by Plaintiff, and with respect to Plaintiff's claim under the theory of intentional infliction of emotional distress, and denied in all other respects.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (# 14) is denied in all other respects.