**Deborah JARMAN, Plaintiff,**

v.

**CITY OF NORTHLAKE and Roger A. Dexter, Defendants.**

No. 96 C 3205.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 16, 1997.

Roslyn Corenzwit Lieb, Chicago, IL, for Deborah Jarman.

William W. Kurnik, Kurnik, Cipolla, Stephenson & Barasha, Arlington Heights, IL, Stuart David Gordon, Maureen Therese Murphy, Stuart Michael Nagel, Zukowski, Rogers, Flood & McArdle, Chicago, IL, for City of Northlake.

William W. Kurnik, Michelle Jeanette Hirsch, Kurnik, Cipolla, Stephenson & Barasha, Arlington Heights, IL, for Roger A. Dexter.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Plaintiff Deborah Jarman has been employed by Defendant City of Northlake since 1993. Jarman claims that between April and November of 1995 she was sexually harassed by Defendant Roger Dexter, and that the City's failure to prevent this harassment renders it liable under Title VII of the Civil Rights Act of 1964 (codified as amended at 42 U.S.C. § 2000e et seq.) and 42 U.S.C. § 1983. Jarman additionally claims that the City violated these same two provisions by retaliating against her for complaining about Dexter's conduct. Northlake has moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all of Jarman's claims against it.[1] For the reasons set forth below, the motion is granted in part and denied in part.

### I. Motion to Dismiss Standard

Dismissal under Rule 12(b)(6) is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80(1957). For purposes of this motion, we must take all of the well-pleaded factual allegations in the complaint as true, and construe them in the light most favorable to the plaintiff. *See Richmond v. Nationwide Cassel L.P.,* 52 F.3d 640, 644 (7th Cir.1995).[2]

---

1. Jarman has also asserted several pendent state claims against Dexter alone (Counts IV–VI of the complaint), which are not relevant to this motion.

2. In accordance with this principle, the *Background* section which follows assumes the factual accuracy of the allegations in the complaint for purposes of this motion only: we will dispense with qualifying terms such as "allegedly," but the statements herein should not be understood as representing factual findings by this court.

## II. Background

In May 1993, the City of Northlake hired Deborah Jarman as a deputy clerk, a position which she has held ever since. Compl. ¶ 8. Jarman's direct supervisor is City Clerk Evelyn Sturm, who in turn is subject to the control of the Northlake City Council, a body comprised of eight elected aldermen. *Id.* ¶¶ 9, 17. The City Council determines the budget for the Clerk's Office, and its approval is required with respect to employment decisions in the Clerk's Office, including hiring, firing, and employee salaries. *Id.* In 1995, one of Northlake's eight elected aldermen was Roger Dexter. *Id.* ¶¶ 9–10.

Beginning in April 1995, Dexter began using obscene, sexually explicit, and offensive language when addressing Jarman. *Id.* ¶ 11. For instance, on several occasions and in the presence of others Dexter falsely stated that Jarman had received her job because she had performed oral sex acts for the Mayor of Northlake, and that she was continuing to perform such acts. *Id.* ¶¶ 12–13. Starting in June 1995, Jarman began complaining to Evelyn Sturm about Dexter's inappropriate remarks, and in October complained directly to the Mayor himself. *Id.* ¶¶ 17–18.[3] On November 2, Jarman testified about Dexter's offensive conduct before the Finance and Rules Committee of the City Council. *Id.* ¶ 20. Less than two weeks after this hearing, Northlake passed an ordinance prohibiting harassment of City employees by elected officials. *Id.* ¶ 21. Dexter did not engage in any further acts of harassment after this point, but he did begin sending letters to the Clerk's Office making complaints about the quality of its work. *Id.* ¶ 26. On March 4, 1996, Northlake censured, condemned, and fined Dexter for his sexual harassment of Jarman and one other City employee. *Id.* ¶¶ 22–23.

**3.** Jarman alleges that Sturm was aware of Dexter's harassment "even before she complained," Compl. ¶ 19, but this allegation is not particularly helpful because it does not indicate when Sturm became aware. Furthermore, since Jarman complained to Sturm rather quickly—within two months of Dexter's first alleged act of harassment—Sturm's awareness of the harass-

## III. Title VII Claims

Jarman alleges two separate violations of Title VII: that Northlake tolerated the sexually hostile working environment created by Dexter's behavior, and that Northlake retaliated against her for complaining about Dexter's harassment. We address each of these claims in turn.

### A. Hostile Environment Claim

Title VII's prohibition against discrimination on the basis of sex includes sexual harassment. *See Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 66–67, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986). To prevail on a "hostile work environment" claim of sexual harassment against her employer, a plaintiff must prove that: (1) she experienced harassment that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive environment; and (2) traditional principles of agency law would render her employer liable for the harassing conduct. *See Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 20–22, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (requiring that harassment be severe or pervasive); *Meritor,* 477 U.S. at 72, 106 S.Ct. at 2408 (requiring examination of traditional agency law principles).

At least for purposes of the present motion, there is no dispute that Jarman call satisfy the first part of this test, but the question of whether Northlake may be held liable for Dexter's conduct warrants further discussion. In a typical sexual harassment case, the plaintiff sues her employer for the harassment perpetrated by one if its employees. This case is unusual, however, because Dexter, as an elected official, was not an "employee" of Northlake. *See* 42 U.S.C. § 2000e(f) ("[T]he term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof...").[4] The

ment prior to the complaint makes little difference to the timing issues in this case.

**4.** Even though Dexter is not the City's employee, Northlake could arguably be liable for Dexter's harassment if he otherwise qualifies as an "agent" of the City. *Compare* 42 U.S.C. § 2000e–2(a)(1) ("It shall be an unlawful employment practice for an *employer* ... to discriminate.

**1378**

EEOC Guidelines set forth the following rule regarding employer liability for harassment perpetrated by non-employees:

> An employer may ... be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action. In reviewing these cases the Commission will consider the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of such non-employees.

29 C.F.R. § 1604.11(e) (1996). In light of this guideline, a number of federal courts have imposed liability on employers for sexual harassment perpetrated by non-employees when the above stated conditions are met.

See, e.g., Hallberg v. Eat 'N Park, Civ. A. No. 94–1888, 1996 WL 182212, at *8 (W.D.Pa. Feb.28, 1996); Magnuson v. Peak Technical Serv., Inc., 808 F.Supp. 500, 512–13 (E.D.Va. 1992); Moffett v. Gene B. Glick Co., 621 F.Supp. 244, 272 (N.D.Ind.1985); see also Whitaker v. Carney, 778 F.2d 216, 221 (5th Cir.1985) (noting potential employer liability for the acts of non-employees); Henson v. City of Dundee, 682 F.2d 897, 910 (11th Cir.1982) (citing § 1604.11(e) and stating that "[t]he environment in which an employee works can be rendered offensive in an equal degree by the acts of supervisors, coworkers, or even strangers to the workplace" (citations omitted)).[5]

■ Applying the standard articulated in § 1604.11(e) to this case, the complaint clearly alleges that Dexter's harassment was perpetrated in the workplace and that North-

....." (emphasis added)); with 42 U.S.C. § 2000e(b) ("The term 'employer' means a person engaged in an industry affecting commerce ... and any agent of such a person." (emphasis added)). Though we need not resolve this question today in light of Northlake's apparent liability under 29 C.F.R. 1604.11(e), discussed infra, we do not believe that an elected official is an "agent" of the government in which he or she serves. We can find no cases squarely addressing this question, but cf. Meadows v. Guptill, 856 F.Supp. 1362, 1371 & n. 5 (D.Ariz.1993) (assuming, without explanation, that a town councilman was an agent of his town), but the Restatement of Agency provides helpful guidance. First, the Restatement indicates that the defining characteristic of an agency relationship is that the principal has control over the conduct of the agent. See Restatement (Second) of Agency § 1(1) (1958). An elected official, however, does not perform his duties subject to the control of the government in which he serves: the government cannot tell him how to vote or which policies to endorse, and, most significantly, it cannot terminate his duties or transfer them to another person. Cf. Ryan v. County of DuPage, 45 F.3d 1090, 1092 (7th Cir.1995) (elected official not subject to control of county). Second, we think there is a compelling analogy between elected officials and elected members of corporate boards of directors, who also serve fixed terms as fiduciaries for entities that have no control over them. The Restatement specifically provides that an individual director of a corporation is not an agent of the corporation because "[h]e has no power of his own to act on the corporation's behalf but only as one of the body of directors acting as a board." See id. § 14C & cmt. b.

5. At first glance, § 1604.11(e) appears to be in tension with Meritor's requirement that courts look to agency principles when determining employer liability, see Meritor, 477 U.S. at 72, 106 S.Ct. at 2408, because it permits an employer to be held liable for harassment perpetrated by persons who are neither its employees nor its agents. This tension could be a significant problem for courts relying on § 1604.11(e) because the EEOC Guidelines are persuasive rather than binding authority. See General Elec. Co. v. Gilbert, 429 U.S. 125, 141–42, 97 S.Ct. 401, 410–11, 50 L.Ed.2d 343 (1976).

Fortunately, closer examination reveals that § 1604.11(e) is consistent with traditional agency principles. The Restatement provides that "[a] person ... is subject to liability for harm resulting from his conduct if he is negligent or reckless ... in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, Upon premises or with instrumentalities under his control." Restatement (Second) of Agency § 213(d) (1958). This provision is substantially similar to § 1604.11(e). One might reasonably argue that it is really a tort doctrine rather than an agency principle. See id. cmt. a ("The rule stated in this section ... is a special application of the general rules stated in the Restatement of Torts."). But when an employer acquiesces in conduct performed on premises within his control, it is consistent with the law of agency (as well as torts) to characterize the performer as the employer's agent. As noted supra, the fundamental characteristic of an agency relationship is the ability of the principal to control the behavior of the "agent," and an employer always has at least some degree of control over anyone on its premises.

lake actually knew of Dexter's harassment of Jarman. Thus, the crucial issue is whether Northlake took "immediate and appropriate corrective action," which must be determined by reference to the extent of Northlake's ability to control Dexter's conduct. Even assuming *arguendo* that Northlake's response was appropriate, see Def.'s Br. at 4 (stating that the City "took the only appropriate ... corrective action that it could"), we believe that Jarman's complaint includes allegations which, liberally construed, support her claim that Northlake's corrective action was not "immediate." The Complaint states that "[b]eginning in or about June, 1995 and continuing through November, 1995, [Jarman] repeatedly complained to her supervisor" about Dexter's harassment. Compl. at ¶ 17. On November 14, 1995, Northlake passed an ordinance prohibiting sexual harassment of employees by elected officials, and in March 1996 Dexter was censured and fined pursuant to this ordinance. *Id.* at ¶¶ 21, 23. The complaint thus alleges a five month delay between the time the City was put on notice of Dexter's behavior and the time when it finally began taking action to prevent it. We think that a five month delay is clearly long enough to prevent the City's response from being characterized as "immediate," which is what § 1604.11(e) requires.

■ With respect to the issue of control, the City argues that it "took the only action it could consistent with Dexter's rights under the First Amendment to the Constitution." Def.'s Br. at 3–5; Def.'s Reply Br. at 5–10. This argument is without merit. As Jarman correctly observes, verbal acts of sexual harassment are not protected speech. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 389–90, 112 S.Ct. 2538, 2546–47, 120 L.Ed.2d 305 (1992); *Roberts v. United States Jaycees*, 468 U.S. 609, 628, 104 S.Ct. 3244, 3255, 82 L.Ed.2d 462 (1984). Literally hundreds of hostile work environment sexual harassment cases, starting with the seminal case of *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), indicate that employers (including public employers) are not only permitted to try to prevent verbal acts of harassment in their workplaces, but Title VII requires them to do so. Hence, there was never any question that Northlake could adopt an ordinance prohibiting acts of sexual harassment in its workplace, as it eventually did (albeit after a five month delay).[6] *See* Compl. ¶ 21. Moreover, ordinances of this sort are not "prior restraints" as Northlake contends. The term "prior restraint" is used to describe "administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 549, 113 S.Ct. 2766, 2771, 125 L.Ed.2d 441 (1993). Ordinances prohibiting sexual harassment achieve their purpose by imposing *post-facto* penalties on persons who engage in sexual harassment, thereby dissuading potential perpetrators: they are not equivalent to court orders enjoining speech. Northlake cites not a single authority (and we would be astonished if any existed) to support its contention that an ordinance prohibiting sexual harassment in the workplace could constitute a prior restraint.

---

**6.** The City argues that even if Dexter's sexually harassing comments are unprotected speech, they are "still subject to constitutional protection under the First Amendment because they were statements made on a matter of public concern, i.e., whether the Mayor gave the plaintiff a job in exchange for sex." Def.'s Reply Br. at 6 (citing *Rankin v. McPherson*, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987), and *Watts v. United States*, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969)). We first note that *Rankin* and *Watts* do not support the City's argument because in both cases the Court concluded that the speech did not fall into an unprotected category (threats). But more fundamentally, the City's argument misses the point of characterizing certain kinds of speech as unprotected: speech that falls in an unprotected category is not protected by the First Amendment *even if* it happens to involve a matter of public concern. To give a few obvious examples of this proposition, every threat to kill the President is manifestly a matter of public concern, yet such threats may be prohibited without offending the First Amendment, *see Rankin*, 483 U.S. at 386–87, 107 S.Ct. at 2897–99; certain kinds of "fighting words," such as those that incite breaches of the peace, may arouse public concern, yet they are not entitled to First Amendment protection, *see Chaplinsky v. New Hampshire*, 315 U.S. 568, 572–73, 62 S.Ct. 766, 769–70, 86 L.Ed. 1031 (1942).

Because the First Amendment created no impediment to the City's ability to bar sexual harassment in its workplace, it seems clear that Northlake had substantial control over Dexter's ability to harass Jarman: it had the power to declare Dexter's conduct illegal and to censure and punish him for it, all of which it eventually did. Compl. ¶¶ 21–22. These actions by the City apparently put an end to Dexter's harassment, since the complaint contains no allegations of harassment after November 1995. Had the City exercised its ability to control Dexter "immediately" after being put on notice of his conduct rather than waiting five months to do so, liability under § 1604.11(e) would probably not attach, but in light of the delay we cannot dismiss Jarman's claim for hostile work environment sexual harassment at this juncture.

### B. Retaliation Claim

■ Title VII prohibits employers from retaliating against employees who complain about sexual harassment. *See* 42 U.S.C. § 2000e–3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by [Title VII].").  To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; and (3) there is a causal link between the protected expression and the adverse action. *Holland v. Jefferson Nat. Life Ins. Co.,* 883 F.2d 1307, 1313 (7th Cir.1989).

Jarman's Complaint fails to establish that she suffered an adverse action by her employer.  The Complaint states: "After Plaintiff complained publicly about Defendant Dexter's unlawful sexually discriminatory conduct to the members of the Northlake City Council, *Defendant Dexter retaliated against Plaintiff* by sending letters to the City Clerk's office, making unjustified complaints about the quality of the office's work." Compl. ¶ 26 (emphasis added).  The writing of these letters, even if retaliatory, cannot be characterized as an action taken "by [Jarman's] employer" since Dexter apparently sent them on his own initiative: upon learn-

ing of the letters, the Mayor of Northlake instructed Dexter to stop sending them, *see* Compl. ¶ 27.  Furthermore, such letters do not constitute "adverse action."  The Seventh Circuit has described the adverse action necessary to sustain a retaliation claim as follows:

> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities.  A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Crady v. Liberty Nat. Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993).  Jarman does not claim that any adverse consequences of the kind described in *Crady* resulted from Dexter's letters.  Even if these letters were somehow interpreted as formal performance evaluations, they would not be sufficient to support a retaliation claim. *See Smart v. Ball State University,* 89 F.3d 437, 441 (7th Cir.1996) (discussing the insufficiency of negative performance evaluations standing alone and stating that "[w]hile adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action"). Accordingly, Jarman's retaliation claim must be dismissed.

### IV. Section 1983 Claims

■ Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any state ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured.... " 42 U.S.C. § 1983. The Seventh Circuit has held that sexual harassment, a form of sex discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment, is actionable under § 1983. *Bohen v. City of East Chicago,* 799 F.2d 1180, 1185 (7th Cir.1986).

Northlake apparently concedes that Dexter, as an alderman, acted under color of law when he harassed Jarman. The City argues, however, that it cannot be held liable for the actions of Dexter because they were not undertaken pursuant to a municipal policy or custom. *See,* Def.'s Br. at 6–7; Def.'s Reply Br. at 12–14.

The seminal case in the area of municipal liability under § 1983 is *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *Monell* provides:

> Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2036. In addition to liability for official policies and well-settled customs, municipalities can also be held liable for single acts by municipal policymakers, *see Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986), provided that the act is taken by a person who "possesses final authority to establish municipal policy with respect to the action ordered," *id.* at 481, 106 S.Ct. at 1299.

In this case, it is clear that Northlake had no official policy authorizing sexual harassment of its employees, and that Dexter, as an individual alderman acting alone, did not possess final authority to establish such a policy, *see id.* (final authority is possessed by the government's "authorized decisionmakers"). Hence, Northlake's § 1983 liability for Dexter's harassment turns on the whether the City had a well-settled custom of condoning sexual harassment of its employees.

Jarman directs our attention to two cases where courts in this Circuit found municipal liability based on a custom of nonresponsiveness to sexual harassment complaints. See Pl.'s Br. at 12. First, in *Bohen v. City of East Chicago,* 799 F.2d 1180, 1185 (7th Cir. 1986), the plaintiff had been employed as a dispatcher for a local fire department, and during the duration of her employment was subjected to constant and severe sexual harassment by her supervisors. *See id.* at 1182–83. The court found that

> management officials responsible for working conditions at the fire department 'knew the general picture if not the details' of the pattern of harassment. Complaints by the victims of sexual harassment were addressed superficially if at all, and the department had no policy against sexual harassment. In sum, sexual harassment was the general, on-going, and accepted practice at the East Chicago Fire Department, and high-ranking, supervisory, and management officials responsible for working conditions at the department knew of, tolerated, and participated in the harassment.

*Id.* 1189. Under these facts, the Seventh Circuit held that the municipal employer could be held liable for failing to prevent the acts of harassment perpetrated by individuals within the fire department. *Id.*

The second case finding municipal liability based on a custom of not responding to sexual harassment complaints is *Donald v. City of Chicago,* No. 90 C 2360, 1992 WL 137190 (N.D.Ill. June 1, 1992). The plaintiff in *Donald,* a truck driver for the City of Chicago, sued the City under § 1983 for harassment perpetrated by her supervisor. Donald reported the harassment to other supervisors employed by the City, wrote a letter to the Commission of the Department of Streets and Sanitation, and requested reassignment to a different supervisor, *see id.* at *1–*2, but the City never reassigned her or took any action against her harasser. *Id.* at *2. The court noted that "[a]fter each incident defendants had the opportunity to take responsive action. However, no action was ever taken."

**1382**

*Id.* at *3. In light of the "inaction by Streets and Sanitation supervisory personnel in the face of repeated allegations of … harassment by the same employee," *id.*, the court concluded that the City followed "a permanent and long-standing custom of nonresponse" to harassment complaints and could be held liable under § 1983. *Id.*

The facts contained in Jarman's complaint differ in a crucial way from those found sufficient to establish municipal liability in *Bohen* and *Donald:* in neither of these cases did the municipality ever take effective action to put a stop to the harassment. Both courts emphasized the cities' deliberate inaction and toleration of sexual harassment, and their apparent intention to continue in that posture, in finding them liable under § 1983. *See, Bohen,* 799 F.2d at 1189 (harassment "was the general, on-going, and accepted practice"); *id.* at 1190 (Posner, J., concurring) (suggesting that municipal liability must rest on "a policy of nonresponse to complaints of harassment, or an authoritative decision not to respond"); *Donald,* 1992 WL 137190 at *3 (noting the "permanent" custom of nonresponse). In the instant case, by contrast, Northake took decisive action to end sexual harassment in its workplace, and it did so within a matter of months of learning of the harassment. *See* Compl ¶¶ 21–22 Although Northlake's five-month delay in responding to Jarman's harassment complaint may not qualify as an "immediate" response so as to insulate the City from Title VII liability, *see supra* Part III.A, we think it is sufficiently responsive to contradict Jarman's claim that Northlake had a "custom or policy" of nonresponse to harassment complaints. Thus, Northlake cannot be held liable for Dexter's acts of harassment under § 1983, and its motion to dismiss this claim is granted.[7]

## V.  Conclusion

For the foregoing reasons, Northlake's motion to dismiss is granted with respect to Jarman's Title VII retaliation claim and her § 1983 claims, but denied with respect to her

Title VII hostile work environment sexual harassment claim.  It is so ordered.

---

7. In her complaint, Jarman also alleges that Northlake is liable under § 1983 for its "retaliation" against her. We need not address this

argument since we have already concluded that Jarman's allegations are not sufficient to state a claim for retaliation. *See supra* Part III.B.