Maria C. **COSTILLA**, Appellant,

v.

**STATE of Minnesota, Respondent.**

No. C8–97–711.

Court of Appeals of Minnesota.

Nov. 25, 1997.

Sonja Dunnwald Peterson, Minneapolis, for Appellant.

Hubert H. Humphrey, III, Attorney General, Cassandra O. O'Hern, Assistant Attorney General, St. Paul, for Respondent.

Considered and decided by
SCHUMACHER, P.J, and NORTON and WILLIS, JJ.

## OPINION

NORTON, Judge.

Appellant sued the State of Minnesota for sexual harassment under the Minnesota Human Rights Act (MHRA) and raised other common law claims. The district court granted respondent summary judgment on all claims. We affirm in part, reverse in part, and remand.

## FACTS

During all times relevant to this case, appellant Maria Costilla was employed by respondent State of Minnesota in its Department of Economic Security (DES). As a state monitor advocate, she worked with urban Hispanics and seasonal migrant farm workers. Costilla was required to work closely with the corresponding federal regional monitor advocate, Herman Acosta, an employee of the United States Department of Labor. Acosta conducted on-site reviews of Minnesota advocate offices. Oftentimes both Costilla and Acosta reviewed sites together in various rural locations where overnight stays were required. Additionally, Costilla and Acosta attended professional training sessions together.

Costilla's complaints derive from Acosta's sexually harassing behavior and the state's failure to take timely and appropriate action to protect her from him. Costilla claims that Acosta committed numerous acts of sexual harassment beginning in 1992 and continuing into 1995. The harassment included inappropriate comments, touching, grabbing, attempted kissing, and solicitations.

Costilla claims that the state was specifically made aware of the sexual harassment on several occasions. In June of 1993, Costilla and Acosta were working in Moorhead, Minnesota. At the end of the day, as they exited the hotel elevator, Acosta grabbed her, tried to kiss her, and wanted to get into Costilla's room. Costilla rejected Acosta's advances. She called a coworker in St. Paul, Beverly Friendt, and told her what happened. Friendt then told a state supervisor, Ronald Threatt, who did not act on the information.

In November 1993, while Costilla was in a training session in Chicago, Acosta publicly made inappropriate suggestions about his relationship with Costilla. He also commented to her about losing her virginity. Costilla again called Friendt and told her what happened. This time, Friendt told DES's affirmative action officer Linda Sloan, who called Costilla in Chicago and told her to leave the conference or change hotels to be safe. The following day, when Costilla returned from Chicago, Sloan and Costilla talked in person and Costilla told her that Acosta's harassment had been occurring since 1992. Sloan told Costilla that she had been through enough and that she would no longer have to go out alone with Acosta; that someone else would go in her place; or that Sloan herself would go. Sloan helped Costilla see a counselor to assist her in dealing with the sexual harassment. She also contacted Acosta's supervisor in Chicago and told him of Acosta's behavior. The supervisor told Sloan that he would talk to Acosta about sexual harassment. The supervisor wrote Acosta a memo prohibiting inappropriate sexually harassing speech and conduct.

In February 1994, Costilla told Sloan that Acosta had been calling her every night at home and would end most conversations with a sexual remark. Sloan again contacted Acosta's supervisor in Chicago and discussed the incidents. Sloan recommended an investigation, offered to assist, suggested training for Acosta, and offered to do the training. The federal office assured Sloan that it would take care of the problem.

In early April 1994, Acosta was in Minnesota to conduct some training. Costilla was present. During the training, Acosta told a story about Costilla and a male coworker that contained inappropriate sexual language and allegations. Costilla told Sloan, who

again called Acosta's supervisor. Acosta was required to write a letter of apology and send it to everyone at the training. Costilla never received the letter.

In late April 1994, Acosta telephoned Costilla and told her that his conduct would not stop; that it would always be more obnoxious than the last time; and that he did not care how much trouble it caused. Costilla reported the phone call to Sloan. This time she did not call Acosta's supervisor. Instead, she assured Costilla that Acosta's supervisor was aware of the situation and that the federal office planned to send Acosta to sexual harassment training.

In the fall of 1994, Costilla told her supervisor that she did not want to go to a meeting because Acosta would be there. Her supervisor required her to attend, despite Acosta's attendance, because the meetings were required for her job. Costilla avoided the meeting by telling her supervisor that she was involved in an investigation and could not get away. It is unclear whether Costilla's supervisors knew that Sloan had assured Costilla that she would be protected from Acosta's harassment and that Costilla would not be required to be present with Acosta in the future.

In March 1995, Acosta was in Minnesota and met with Costilla. He insisted that Costilla give him her home telephone number and got angry when she refused. In April 1995, Acosta called Costilla, joked to her about the size of his penis, and told others in his office that he was talking to Costilla. Costilla met with Sloan, told her of the telephone conversation, and told her that Acosta's harassment had continued nearly unabated. Sloan called Acosta's new supervisor and informed him of Acosta's behavior. In addition to a full investigation, Sloan recommended that Acosta not be allowed to work with Costilla. The supervisor told Sloan that Acosta would be suspended. It is unclear if Acosta was suspended at that time.

The harassment finally stopped in June 1995 when a high-ranking DES commissioner sent a letter to the federal regional administrator in Chicago insisting that Acosta have no further contact with Costilla and that the federal office conduct a full investigation into Acosta's behavior. Later that month, a new federal monitor advocate was assigned to the Minnesota region.

In March of 1996, Costilla was required to go to a meeting where Acosta would be present. Although she talked to her supervisor about not attending, the supervisor again told her that she could not avoid meetings that Acosta would attend. The supervisor added that Costilla needed to be strong and attend the meeting because Minnesota's connection to the national level depended on it.

Due to the state's untimely action, Costilla brought a complaint against the state in January 1996 alleging: sexual harassment under the MHRA; intentional and negligent infliction of emotional distress; and breach of contract or promissory estoppel. The district court granted summary judgment to the state on all claims. Costilla appeals the summary judgment as to her sexual harassment claim and the intentional and negligent infliction of emotional distress claims. In October 1996, Costilla also brought a separate action against Acosta and the United States Department of Labor. Costilla remains employed at the state.

## ISSUES

I.  Does the MHRA recognize non-employee sexual harassment?

II. Does the MHRA's one-year statute of limitation bar Costilla's claim?

III. Did the district court err when it granted the state summary judgment when the state had notice in June 1993 that a non-employee, Acosta, was sexually harassing its employee, Costilla; the state took no corrective action for five months; and even after it took some action, Acosta continued to sexually harass Costilla into 1995?

IV. Does official immunity bar Costilla's claims?

V.  Did the district court err when it granted the state summary judgment on Costilla's intentional and negligent infliction of emotional distress claims?

## ANALYSIS

### I.

■ The threshold issue presented by this case, and one of first impression in this court,

is whether the Minnesota Human Rights Act (MHRA) allows an employee to bring an action against her employer for sexual harassment when the harassing party is a non-employee. The district court did not question the validity of the cause of action. We determine that the MHRA, under certain circumstances, requires an employer to protect its employees from non-employee sexual harassment. Three authorities support our determination that the MHRA covers non-employee sexual harassment: the Equal Employment Opportunity Commission (EEOC) guidelines, other jurisdictions' comparable decisions, and the MHRA's broad remedial intent to remove discrimination from the workplace.

First, the United States Supreme Court has approved the specific use of EEOC guidelines in sexual harassment cases. *See Meritor Sav. Bank, F.S.B. v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986) (guidelines represent informed judgment; courts and litigants may properly resort to them for guidance). The EEOC guidelines recognize that an employer can be liable for the sexual harassment of its employees by non-employees:

> An employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action. In reviewing these cases, the Commission will consider the extent of the employer's control and any other legal responsibility, which the employer may have with respect to the conduct of such non-employees.

29 C.F.R. § 1604.11(e) (1996). The prohibition set out in section 1604.11(e) applies to this case.

Second, it is well established that Minnesota courts look to principles and interpretations of federal Title VII cases when construing the MHRA. *See e.g., Continental Can Co. v. State by Wilson*, 297 N.W.2d 241, 246 (Minn.1980) (Title VII cases and principles are instructive and have been applied to

the MHRA) (citing *Danz v. Jones*, 263 N.W.2d 395, 398–99 (Minn.1978)). "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor Sav. Bank*, 477 U.S. at 65, 106 S.Ct. at 2405.

Several federal courts of appeal, federal district courts, and at least one state court have held that an employee has a cause of action against his or her employer when a non-employee sexually harasses the employee. *See e.g., Folkerson v. Circus Circus Enters., Inc.*, 107 F.3d 754, 756 (9th Cir.1997) (holding employer may be liable when its employee is sexually harassed by employer's patrons and employer either ratifies or acquiesces in harassment by not taking immediate and/or corrective action); *Trent v. Valley Electric Ass'n*, 41 F.3d 524, 527 (9th Cir.1994) (holding it reasonable for employee to believe that Title VII protected her from sexually offensive remarks made by non-employee who was conducting mandatory training session); *Henson v. City of Dundee*, 682 F.2d 897, 910 (11th Cir.1982) (recognizing that non-employee strangers may cause sexually hostile working environment); *Jarman v. City of Northlake*, 950 F.Supp. 1375, 1377–80 (N.D.Ill.1997) (holding employee had cause of action against city when non-employee alderman sexually harassed employee); *Powell v. Las Vegas Hilton Corp.*, 841 F.Supp. 1024, 1028 (D.Nev.1992) (holding employer could be liable for sexual harassment of employees by non-employees, including employer's customers); *Magnuson v. Peak Technical Servs., Inc.*, 808 F.Supp. 500, 513 (E.D.Va.1992) (holding employee had cause of action against her employers when non-employee harassed her and employers failed to take corrective action), *affirmed* 40 F.3d 1244 (4th Cir.1994); *EEOC v. Sage Realty Corp.*, 507 F.Supp. 599, 608 (S.D.N.Y.1981) (holding employer liable for requiring hotel worker to wear sexually revealing costume that lead to harassment by public); *Woods–Pirozzi v. Nabisco Foods*, 290 N.J.Super. 252, 675 A.2d 684, 692 (1996) (holding employer may be liable for sexual harassment of employee by independent contractor); 29

C.F.R. § 1604.11(e).[1] These cases are persuasive.

Third, the MHRA and cases interpreting the MHRA are consistent with the EEOC guidelines and the non-employee sexual harassment cases. Sexual harassment is a form of discrimination under the MHRA. Minn.Stat. § 363.01, subd. 14 (1996). The MHRA holds an employer liable when sexual harassment discrimination occurs in the workplace, the employer knows or should know of the harassment, and the employer fails to take "timely and appropriate action." *See* Minn.Stat. §§ 363.01, subd. 41(3) (sexual harassment occurs when the employer knows or should know of the existence of the harassment and fails to take timely and appropriate action); 363.03, subd. 1(2)(c) (1996) (employer engages in unfair employment practice when it discriminates, because of sex, against person with respect to terms, conditions, or privileges of employment). Additionally, the Minnesota Supreme Court relied on a liberal, remedial interpretation of the MHRA when it first recognized other types of sexual harassment under the Act in the past. *See Continental Can,* 297 N.W.2d at 248–49 (holding co-employee sexual harassment actionable; MHRA should be liberally construed); *see also Cummings v. Koehnen,* 568 N.W.2d 418, 421–23 (Minn. 1997) (holding same-sex sexual harassment actionable; MHRA should be liberally construed). Accordingly, an employer has a broad duty under the MHRA to protect its employees from several forms of sexual harassment.

This court holds that the EEOC guidelines, other jurisdictions' persuasive decisions, and the broad, liberally construed remedial purposes of the MHRA may impose liability upon an employer when it is aware that its employee is subject to sexual harassment by a non-employee, yet fails to take timely and appropriate action to protect its employee.

## II.

Next, having acknowledged Costilla's ability to bring this cause of action under the MHRA, we proceed to analyze the merits of her claim.

■■■ As a preliminary matter, the state claims that the statute of limitations bars Costilla's claim. The district court did not decide the statute of limitations issue, nor did the state file a notice of review on the issue. A respondent is not required to file a notice of review to preserve issues that the district court did not decide. *Hoyt Inv. Co. v. Bloomington Commerce & Trade Ctr. Assocs.,* 418 N.W.2d 173, 175 (Minn.1988). Ordinarily, we will not consider issues that have not been decided below. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988). An appellate court may, however, take any action in the interest of justice. Minn. R. Civ.App. P. 103.04.

> An appellate court may decide an issue not determined by a trial court where that question is decisive of the entire controversy and where there is no possible advantage or disadvantage to either party in not having a prior ruling on the question. No party is disadvantaged when the facts are undisputed.

*Harms v. Independent Sch. Dist. No. 300,* 450 N.W.2d 571, 577 (Minn.1990) (citations omitted). Facts may be undisputed even though the parties disagree on the inferences or legal conclusions to be drawn from the facts. *Id.* at 578. The construction and applicability of statutes of limitations are questions of law that this court reviews de novo. *Ryan v. ITT Life Ins. Corp.,* 450 N.W.2d 126, 128 (Minn.1990).

■ In the current action, both parties briefed the applicability of the MHRA's stat-

---

1. Federal decisions discussing non-employee harassment have been categorized into three types: 1) employee's position places him or her under the "control" of a non-employee, both employer and non-employee exercise control over the employee and are potentially liable; 2) employer's dress code that encourages patrons to sexually harass employee can create liability for employer because of employer's acquiescence; and 3) employers are charged with a broad duty of protecting the employee from sexual harassment. *See Rosenbloom v. Senior Resource, Inc.,* 974 F.Supp. 738, 743 (D.Minn.1997) (comparing federal circuits' non-employee sexual harassment caselaw to the possibility of extending liability to non-employee racially hostile work environment) (citations omitted).

ute of limitations to the district court and to this court. If the issues were resolved for the state, that would decide the entire controversy. We conclude that extending review to the statute of limitations issue will resolve all legal issues between the parties at this time and will further judicial efficiency. *See McGuire v. C & L Restaurant Inc.*, 346 N.W.2d 605, 614 n. 11 (Minn.1984) (in interests of judicial efficiency, reviewing court may consider issue not properly before it to resolve all controversies between parties at same time). With that, we turn to the state's substantive statute of limitations argument.

The state contends that any discussion of timeliness and appropriateness of the employer's actions is barred by the MHRA's statute of limitations because, under the Act, the claim must be brought within one year of "the occurrence of the practice." Minn.Stat. § 363.06, subd. 3 (1996). Because Costilla filed her complaint in January 1996, the limitations provision of the Act requires Costilla to show the state acted in an untimely or inappropriate manner sometime during 1995.

The state argues that, even if the court finds that Threatt's failure to act on the first report of harassment in June 1993 constituted state acquiescence in Costilla's harassment, as of November 1993 when Sloan got involved, the state subsequently took timely and appropriate actions to stop the harassment. Under the state's reasoning, since the only inappropriate response occurred in June 1993, outside the limitations period, Costilla's claim would be barred. Costilla contends, however, that the doctrine of continuing violations keeps her claim alive.

Initially, we note that a statute of limitations issue, which is traditionally a question of law, can also be a question of fact. *See Grondahl v. Bulluck*, 318 N.W.2d 240, 242–3 (Minn.1982) (in medical malpractice action, where disputed questions of material fact exist as to when treatment ceased, statute of limitations question is decided by jury).

▆▆▆ In MHRA cases, the continuing violation doctrine acts as an exception to the MHRA statute of limitations and allows a complainant to hold an employer liable for a series of related acts of sexual harassment if "the unlawful employment practice manifests itself over time." *Giuliani v. Stuart Corp.*, 512 N.W.2d 589, 595 (Minn.App.1994) (quoting *Lane v. Ground Round, Inc.*, 775 F.Supp. 1219, 1224 (E.D.Mo.1991)); *see also Varner v. National Super Mkts., Inc.*, 94 F.3d 1209, 1214 (8th Cir.1996) (under continuing violations theory, entire course of discriminatory conduct is actionable), *cert. denied,* —— U.S. ——, 117 S.Ct. 946, 136 L.Ed.2d 835 (1997); *Sigurdson v. Isanti County*, 448 N.W.2d 62, 68 (Minn.1989) (employer's wrongful denial of promotion for several years was continuing discrimination). To preserve her claims under the continuing violation doctrine, Costilla "must show that at least one incident of harassment occurred within the limitations period." *Giuliani*, 512 N.W.2d at 595.

To resolve whether the state acted inappropriately within the limitations period, we must consider whether the state's actions were reasonable. As we noted, in non-employee sexual harassment cases, the reasonableness of an employer's response will be viewed in light of the employer's ability to control the non-employee and in light of the MHRA's broad purpose of requiring employers to take timely and appropriate action to protect employees from sexual harassment. Minn.Stat. § 363.01, subd. 41(3); *Cummings*, 568 N.W.2d at 422, 29 C.F.R. § 1604.11(e). At oral argument, the state admitted that it had a very close working relationship with the federal monitor office. Acosta's position *vis-à-vis* Costilla was analogous to an off-site, independent trainer with respect to an employee required to take his class, *Trent*, 41 F.3d at 527, or a regional car salesman's role with respect to an on-site employee of a national car manufacturer. *Magnuson*, 808 F.Supp. at 513. In both *Trent* and *Magnuson*, the employers' reactions to reports of harassment were considered less than adequate and the courts determined that fact issues precluded summary judgments for the employers.

We now apply the reasonableness standard to the employer's actions in this case. Acosta was still harassing Costilla in March and April of 1995. The only state actor that had attempted to stop the sexual harassment was DES's affirmative action officer, Sloan. In November 1993, Sloan told Costilla she had

been through enough and assured Costilla that she would not have to be further subjected to Acosta's harassment. Nevertheless, Costilla remained in the same position, receiving numerous harassing telephone calls, including one in April 1995, within the limitations period. In March 1995, Acosta insisted on obtaining Costilla's home phone number and got angry when she refused. Further, in 1996, Costilla's supervisor told Costilla that she had to attend an event where it was known that Acosta would be present.[2]

When we view the facts in a light most favorable to Costilla, we hold that a question of material fact exists as to the appropriateness of the state's actions. *Folkerson*, 107 F.3d at 756 (employer may be liable for non-employee's harassment when employer "either ratifies or acquiesces in the harassment by not taking immediate and/or corrective actions"). Accordingly, if a reasonable fact finder could conclude the state's actions were inappropriate, the fact-finder could also reasonably conclude that the state's inappropriate actions continued into the limitations period, establishing a continuing violation.

The reasonableness of the state's failure to take stronger, more decisive action is especially doubtful in light of the admittedly close working relationship between the state and federal offices and the MHRA's liberally construed requirement that employers act quickly and reasonably even when the form of the harassment is less well known. For example, one could conclude that the state's primary reliance on telephone calls to Acosta's supervisors, from 1993 to the late spring of 1995, represented an inappropriate response and a continuing violation within the

statutory period, given the close relationship between the state and federal offices and Acosta's relentless history. Furthermore, whether the state was capable of stopping Acosta's harassment more effectively was conclusively proven when finally, in the summer of 1995, a high-ranking state official sent one letter to a high-ranking federal official and within days Acosta was removed from the Minnesota region and the harassment ceased.

For purposes of the statute of limitations issue, when we view the entire record in a light most favorable to Costilla, we hold that the record contains sufficient evidence of the state's acquiescence in Costilla's sexual harassment that occurred within the MHRA limitations period to raise fact issues and prevent judgment for the state as a matter of law.

## III.

■ We next review the merits of the summary judgment for the state.[3] The district court held the state's responses to the harassment were both timely and appropriate. On appeal from summary judgment, this court must determine whether any genuine issues of material fact exist and whether the district court erred in its application of the law. *Wartnick v. Moss & Barnett*, 490 N.W.2d 108, 112 (Minn.1992). In our analysis, we "must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

Costilla has a cause of action for sexual harassment pursuant to Minn.Stat. § 363.01, subd. 41(3). Minnesota has adopted the *McDonnell Douglas* burden-shifting frame-

---

2. It is unclear whether Sloan ever notified Costilla's supervisors of the sexual harassment. It is also unclear whether she informed them that in November 1993 she had told Costilla that Costilla would not be required to attend events where Acosta would be present. Regardless, the state's acquiescence in the harassment is established either by Sloan's failure to communicate the seriousness of the harassment to Costilla's supervisors or by the supervisors' disregard for Costilla's safety. Additionally, because the 1996 incident occurred after Costilla filed her claim, we do not consider it for purposes of the statute of limitations issue.

3. We note that, even though the district court did not rule on the continuing violations theory, it still considered conduct already outside of the statutory period. Because we hold the continuing violation theory applies here, the state is potentially liable for all conduct arising before the statutory period. *Varner*, 94 F.3d at 1214 (under continuing violation theory, entire course of harassing conduct is actionable). Accordingly, we review the entire course of the state's conduct using both the scope of the district court's decision and the continuing violations theory.

work for sexual harassment claims. *Klink v. Ramsey County by Zacharias,* 397 N.W.2d 894, 900 (Minn.App.1986) (citing *Sigurdson v. Isanti County,* 386 N.W.2d 715, 719–20 (Minn.1986); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)), *review denied* (Minn. Feb. 13, 1987).

■ Under the burden-shifting framework, the plaintiff first must present facts to establish a prima facie case. *Klink,* 397 N.W.2d at 901. To establish a prima facie case of harassment, a plaintiff-employee must present facts to meet a five-factor test: 1) the employee is part of a protected group; 2) the employee is subjected to unwelcome sexual harassment; 3) the harassment is based on sex; 4) the harassment affected a term, condition, or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take remedial action. *Id.*

Summary judgment was granted in this case because the district court determined that Costilla did not meet her burden of showing that the state failed to take reasonable remedial action in response to her sexual harassment. In other words, since the district court found that Costilla could not satisfy the fifth factor under *Klink,* she could not make out a prima facie case of sexual harassment and summary judgment was granted to the state. The controlling issue that this court reviews de novo, therefore, is whether Costilla raised a genuine issue of material fact regarding the timeliness and appropriateness of the state's action once it was made aware of the harassment.

In challenging summary judgment, Costilla contends she raised a question of fact over whether the state's reaction to the harassment was timely or appropriate. Her timeliness argument focuses on the affidavit of her coworker, Beverly Friendt. Friendt's affidavit avers that the state was aware of Costilla's harassment in June of 1993, when Friendt told Ronald Threatt, a state supervisor, that Costilla had called her about Acosta's sexually harassing behavior in Moorhead. The district court disbelieved, and thereby incorrectly weighed, the Friendt affidavit. *See Nord v. Herreid,* 305 N.W.2d 337, 339

(Minn.1981) (on motion for summary judgment, district court does not decide fact issues; its sole function is to determine if fact issues exist). The court should have considered the facts presented in the affidavit.

The affidavit establishes that the state was aware of the harassment in June 1993. The state took no action until November 1993, five months later. According to the state's own employee handbook, supervisors and managers are required to respond in some way to informal complaints within five calendar days. The state has not explained Threatt's failure to respond. Thus, when the affidavit is properly considered, a genuine issue of material facts exists as to whether the state, through Threatt, was aware of the harassment as early as June 1993, yet did not act until five months later. Under both the MHRA and the state's sexual harassment policy, Threatt had an affirmative duty to respond in a timely manner to the information Friendt relayed about Costilla's harassment. *Cf. Jarman,* 950 F.Supp. at 1379 (where five month delay stands between time employer had notice of sexual harassment and time it finally took steps to prevent it, delay is "clearly long enough to prevent the City's response from being characterized as 'immediate,' which is what [29 C.F.R.] § 1604.11(e) requires"). Accordingly, the district court's finding on this issue was in error.

Costilla also alleges that the state's actions were inappropriate because Costilla continued to be subjected to sexual harassment from the same known individual for approximately two years. As discussed above, we hold that a reasonable fact-finder could determine that the state's response was inadequate. Because Costilla presented genuine issues of material fact regarding the timeliness and appropriateness of the state's response, we reverse summary judgment on the MHRA claim.

**IV.**

■ The state argues that official immunity should bar Costilla's cause of action because the state's reaction to harassment is a

discretionary act.[4] When an employer learns of sexual harassment, the employer must take timely and appropriate remedial action. Minn.Stat. § 363.01, subd. 41(3). Generally, a governmental employer's reaction to a report of alleged harassment involves a level of discretionary decision-making. *Davis v. Hennepin County*, 559 N.W.2d 117, 123 (Minn.App.1997), *review denied* (Minn. May 20, 1997). This court has previously held, however, that official immunity will not apply in a MHRA sexual harassment case if there is a question of fact as to whether the alleged offending party acted with malice. *Id.* at 122–23. Malice that defeats official immunity is "the intentional doing of a wrongful act without legal justification" or "the willful violation of a known right." *Id.* at 123 (quoting *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991)). The focus consists of an "objective inquiry into the legal reasonableness of an official's actions." *Id.* (quoting *State by Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 571 (Minn.1994)).

The *Davis* court's reasoning also controls this case.

> Davis's claims under the MHRA require a virtually identical showing [to that required to defeat official immunity]. Her claims survive only through proof of willful conduct on the part of the defendant. Sexual harassment requires a showing that "the employer *knows or should know* of the existence of the harassment and fails to take timely and appropriate action." Minn.Stat. § 363.01 subd. 41 (1996) (emphasis added). * * *

The same evidence necessary to prove discrimination also satisfies the evidentiary requirement for demonstrating willful or malicious conduct for purposes of official immunity. Both require a finding that the defendant acted intentionally, and the inquiry for each focuses on the objective reasonableness of the defendant's actions. As a result, the evidence sufficient to sustain a claim under these sections of the MHRA is equally sufficient to bar the application of official immunity based on the malice exception.

*Id.* (citations omitted). Accordingly, because a question of fact exists as to the timeliness and appropriateness of the state's actions, we determine that official immunity cannot bar Costilla's claim.

### V.

Finally, we review the district court's treatment of Costilla's common law claims. In Minnesota, a successful claim of intentional infliction of emotional distress must satisfy a three-part test. The defendant's conduct must be (1) extreme and outrageous, (2) intentional or reckless, and (3) cause severe emotional distress. *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438–39 (Minn.1983). This tort requires conduct that is extreme and outrageous and utterly intolerable in a civilized community. *Id.* at 439 (citing *Haagenson v. National Farmers Union Property & Cas. Co.*, 277 N.W.2d 648, 652 n. 3 (Minn.1979)). Because the sexual harassment in this case constituted a new cause of action and because the employer did make some attempts to remedy Acosta's harassment, the employer's actions and inactions did not reach the necessary level of conduct for this tort as a matter of law, nor do the facts raise issues for trial. Accordingly, we affirm the district court's award of summary judgment to the state on Costilla's claim of intentional infliction of emotional distress.

Costilla can only prevail on a cause of action for negligent infliction of emotional distress if she can prove that she suffered a direct invasion of her rights that caused mental anguish and accompanying physical injury. *Soucek v. Banham*, 503 N.W.2d 153, 163–64 (Minn.App.1993). Costilla has not alleged physical injuries necessary for this tort. Accordingly, we hold that the district court correctly granted summary judgment

---

**4.** The state also contended that immunity should apply because it had no reason to believe that its treatment of Costilla violated any known right. The MHRA, however, requires an employer to protect its employees against well-known and less well-known forms of sexual harassment. *See Cummings*, 568 N.W.2d at 421 (court decided for first time that MHRA prohibits same-sex sexual harassment); *Continental Can*, 297 N.W.2d at 248–49 (court decided for first time that co-employee sexual harassment was actionable under MHRA).

to the state on Costilla's claim of negligent infliction of emotional distress.

## DECISION

An employer may be liable when a non-employee sexually harasses an employee. A question of fact exists as to an employer's appropriate and timely response to non-employee sexual harassment, when the employer initially delays five months before acting, and ultimately fails to protect its employee from known sexual harassment by a known sexual harasser for a period of two years. Accordingly, the district court's summary judgment for the state on Costilla's MHRA sexual harassment claim is reversed and remanded for trial. Summary judgment for the state on Costilla's claims for intentional and negligent infliction of emotional distress was proper.

**Affirmed in part, reversed in part, and remanded.**

WILLIS, Judge (concurring in part and dissenting in part).

I concur with the majority that the Minnesota Human Rights Act (MHRA) allows, under appropriate circumstances, an action against an employer for sexual harassment of its employee by a non-employee. I further concur with the majority's affirmance of the dismissal of Costilla's claims of intentional infliction of emotional distress and negligent infliction of emotional distress. But because I believe that Costilla's MHRA claim against the state, as her employer, is barred by the act's one-year statute of limitations, I respectfully dissent from the majority on that issue.

Accepting the facts in the light most favorable to Costilla, as we must, I do not believe that she has alleged, or that the record shows, facts establishing that any act of discrimination against her by the state within the year preceding the filing of her complaint. *See* Minn.Stat. § 363.06, subd. 3 (1996) (requiring claim to be brought within one year of discriminatory practice). Because Costilla has not shown there is evidence of at least one act of discrimination by the state during 1995, the continuing violations theory cannot apply to her cause of

action. *See Giuliani v. Stuart Corp.*, 512 N.W.2d 589, 595 (Minn.App.1994) (stating that continuing violation theory applies when at least one act of harassment occurs during limitation period).

According to Costilla, two incidents of harassment by Acosta occurred in 1995: one in March and one in April. But Acosta's actions cannot toll the statute and are not the focus of our inquiry. Costilla has a separate action pending against Acosta and the United States Department of Labor, as his employer. The case before us is based on allegations that the state discriminated against Costilla by failing to take timely and appropriate action to stop Acosta's sexual harassment. For the continuing violations theory to apply here, Costilla must show evidence of at least one act of such discrimination by the state during 1995. She has failed to do so.

As noted, I concur that the MHRA allows an action against an employer based on the sexual harassment of its employee by a non-employee. But it is important to note that Equal Employment Opportunity guidelines, which similarly recognize such employer liability and on which the majority in part relies, provide that in reviewing such cases, "the Commission will consider the extent of the employer's control and any other legal responsibility, which the employer may have with respect to the conduct of such non-employees." 29 C.F.R. § 1604.11(e) (1996). Acosta was an employee of the federal government, not of the state. The state could not discipline Acosta, nor could it terminate his employment. The record shows that the state learned about the March and April 1995 incidents of harassment in May 1995. DES's affirmative action officer immediately contacted Acosta's supervisor, recommending a full investigation and that Acosta not be allowed to work with Costilla. The affirmative action officer also contacted the United States Department of Labor's regional Equal Employment Opportunity agent regarding Acosta's conduct. In June 1995, the deputy commissioner of the Minnesota Department of Economic Security wrote to the Regional Administrator of the United States Department of Labor regarding Acosta's harassment of Costilla, which resulted in Acosta's

reassignment and which Costilla concedes was "appropriate action." The state acted immediately in May 1995 upon learning of the two 1995 incidents of harassment, and Acosta's harassment stopped.

I find nothing in the record or in the facts Costilla alleges that suggests that during 1995 the state discriminated against her by failing to take timely and appropriate action to stop Acosta's sexual harassment. I conclude, therefore, that Costilla's claim is barred by the MHRA's one-year statute of limitations.